**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| ARIANN J-HANNA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. CIV 10-504-TUC-CKJ |
| vs. ) | |
| ) | **ORDER** |
| TUCSON DODGE INC., et al., ) | |
| ) | |
| Defendants. ) | |

Pending before the Court is the Motion for Judgment on the Pleadings filed by Enterprise Rent-A-Car ("Enterprise") (Doc. 30), the Motion to Stay Case and Compel Arbitration filed by Tucson Dodge Incorporated ("Tucson Dodge") (Doc. 32), the Motion to Dismiss Case filed by Tucson Chrysler Jeep Incorporated ("Tucson Chrysler") (Doc. 33), the Motion for Extension of Time to File Response by Ariann J-Hanna ("J-Hanna") (Doc. 36), the Motion to Strike filed by Enterprise (Doc. 39), the Motion to Strike filed by Tucson Dodge (Doc. 47), the Motion to Strike filed by Tucson Chrysler (Doc. 49), and the Motion for Leave to File Amended Complaint filed by J-Hanna (Doc. 50).[1]

---

[1] The Court notes that, in her Response to the Notice of Removal, J-Hanna asserts that this case involves the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312 (1998), which creates a federal private cause of action for a warrantor's failure to comply with the terms of a written warranty." *Milecevic v. Fletcher Jones Imports*, 402 F.3d 912, 917 (9th Cir. 2005). However, neither her original Complaint nor her proposed Amended Complaint state a claim under that Act. However, this matter was removed as arising under, arising in, or related to cases under the Bankruptcy Code. *See* 28 U.S.C. § 1452.

Although oral argument has been requested, the Court finds it would not be assisted by oral argument and declines to schedule these matters for argument. *See generally* LRCiv 7.2(f).

I. *Motion for Leave to File Amended Complaint (Doc. 50)*

Where a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In determining whether an amended pleading should be permitted, "[f]ive factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Plaintiff J-Hanna asserts that granting the motion will not surprise or prejudice Defendants, that denial of the motion would result in substantial injustice and prejudice to J-Hanna. Defendants Tucson Dodge and Tucson Chrysler have filed a response in which they assert there has been undue delay in seeking leave to file the amended complaint, that they would be prejudiced by the filing of an amended complaint, and that an amendment would be futile. Defendant Enterprise has filed a joinder to the response in which Enterprise asserts that amendment would be futile.

On February 22, 2011, this Court granted J-Hanna 60 additional days to complete service. Approximately three months after that Order, J-Hanna filed her motion for leave to amend her complaint. The Court finds that seeking to amend the complaint approximately three months after being granted additional time to complete service does not support a finding of dilatory tactics or bad faith. Moreover, a scheduling order has not yet been entered in this case; rather, the viability of the claims against Defendants is still being determined. The Court finds, therefore, that any prejudice to Defendants would be minimal. In discussing

the other pending motions, the Court addresses whether amending the complaint would be futile. *See infra*. The Court will grant the Motion for Leave to File Amended Complaint.

II. *Motion for Judgment on the Pleadings (Doc. 30) and Motion to Strike (Doc. 39)*

Enterprise has requested this Court strike the Addendum and Second Addendum to J-Hanna's response to the Motion for Judgment on the Pleadings. J-Hanna has not filed a response. The applicable local rule provides only for a motion, response, and a reply. Pursuant to LRCiv 7.2, the Court will grant the motion to strike.

Fed.R.Civ.P. 12(c) provides that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Dismissal through a motion for judgment on the pleadings is appropriate "'only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.'" *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988), *quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The moving party is entitled to judgment as a matter of law when, even if all of the material facts in the pleading under attack are true, judgment on the pleadings is appropriate. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "All allegations of fact of the opposing party are accepted as true." *Austad v. United States*, 386 F.2d 147, 149 (1967). Furthermore, all inferences reasonably drawn from the alleged facts must be construed in favor of the responding party. *General Conference Corp. of Seventh-Day Adventists v. Seventh Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). However, conclusory allegations are insufficient to defeat a motion for judgment on the pleadings. *McGlinchy*, 845 F.2d at 810.

A. *Arizona Consumer Fraud Act, A.R.S. §§ 44-1521– 44-1534*

In asserting that judgment on the pleadings is appropriate as to this claim, Enterprise lists the elements needed to claim fraudulent concealment. *See Coleman v. Watts*, 87 F.Supp.2d 944, 951-52 (D.Ariz. 1998). However, J-Hanna asserts a claim under the Arizona

Consumer Fraud Act. *See* A.R.S. § 44-1522. "The elements of a private cause of action under the act are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 342, 666 P.2d 83, 87 (App. 1983).

Generally, "there is no need to show privity when recovery for a product-caused injury is sought on the ground that the defendant manufacturer or seller was guilty of fraud and deceit, as fraud is a recognized exception to the requirement of privity." Am.L.Prod.Liab.3d § 25:5 (2011). Although Enterprise asserts that *Sutter Home Winery, Inc. v. Vintage*, 971 F.2d 401, 407 (9th Cir. 1992), prevents a claim, *Sutter Home* is distinguishable from this case. Sutter Home was alleged to have deceived Vintage by "secretly selling to another distributor the exclusive rights to distribute its wine." *Id*. Unlike Vintage, J-Hanna was a subsequent purchaser. Moreover, in this case, Enterprise and Chrysler

In her original Complaint, J-Hanna alleges:

> 12. Enterprise Rent-A-Car Company of San Francisco, LLC and Chrysler Group LLC didn't disclose history on the vehicle creating a false idea that it was worth more money when it devalued due to theft and abuse as a rental vehicle. This left the Plaintiff with a vehicle that was non repairable and salvage.

Complaint, p. 2. In her proposed Amended Complaint, J-Hanna alleges:

> 14. Enterprise Rent-A-Car and Chrysler Group LLC did not disclose history on the vehicle creating a false idea that it was worth more money when it devalued due to theft and, frame damage and abuse as a rental vehicle.

Proposed Amended Complaint, p. 4. Arizona recognizes that producing a false impression to mislead another may be the basis for a fraud claim. *See Sarwark Motor Sales, Inc. v. Husband*, 5 Ariz.App. 304, 426 P.2d 404 (1967); *see also Madsen v. Western American Mortgage Co.*, 143 Ariz. 614, 618, 694 P.2d 1228, 1232 (App. 1985) (includes "representations that have a 'tendency and capacity' to convey misleading impressions to consumers even though interpretations that would not be misleading also are possible"). The Court finds J-Hanna has adequately pleaded a claim upon which relief can be granted under the Arizona Consumer Fraud Act against Enterprise.

B. *Common Law Fraud*[2]

Common law fraud requires proof of "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; [and] (9) his consequent and proximate injury." *Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 77, 985 P.2d 556, 562 (App.1998). The Court finds that J-Hanna has adequately pleaded at this stage of the proceedings a common law fraud claim against Enterprise in both her original Complaint and in her proposed Amended Complaint.

C. *A.R.S. § 44-1212*

The Court finds J-Hanna's failure to include this claim in her proposed Amended Complaint is an acknowledgment that judgment on the pleadings is appropriate as to this claim. Indeed, J-Hanna has not responded to Enterprise's argument regarding this claim in her response. *See* L.R.Civ. 7.2(i) (failure to file a response is deemed a consent to the granting of the motion). The Court finds judgment on the pleadings in favor of Enterprise and against J-Hanna is appropriate as to the claim of a violation of A.R.S. § 44-1212.

D. *Breach of Warranty*

Although J-Hanna acknowledges that Enterprise sold the vehicle "as is," J-Hanna argues that a successive relationship is established by the original warranty contract. J-Hanna further points out that Enterprise acknowledged in its Car Sale Invoice that it was bound by its obligations and that Chrysler warranted that the vehicle was "in safe operating condition, [had] no repaired or unrepaired frame damage, [and] the vehicle's cylinder block [was] not damaged or cracked[.]" Response, p. 3. However, J-Hanna does not allege that

---

[2]The Court notes that, unlike in her response to Tucson Chrysler's Motion to Dismiss, J-Hanna has not asserted in her response to the Motion for Judgment on the Pleadings that she did not state a claim for common law fraud against Enterprise.

- 5 -

1 | any warranty from Enterprise was provided to her. The Court agrees with Enterprise that "[e]conomic losses are not recoverable for breach of implied warranty in the absence of privity of contract." *Flory v. Silvercrest Industries, Inc.*, 129 Ariz. 574, 579 (1981); *Chaurasia v. General Motors Corp.*, 212 Ariz.18, 24 (App. 2006). The lack of privity prevents a valid breach of warranty claim against Enterprise. The Court finds judgment on the pleadings in favor of Enterprise and against J-Hanna is appropriate as to the breach of warranty claim.

The Court will grant Enterprise's Motion for Judgment on the Pleadings as to the A.R.S. § 44-1212 and Breach of Warranty claims; the Court will dismiss these claims as to Enterprise. As to the fraud claims, the Court finds the allegations in the Complaint and the proposed Amended Complaint are so similar as to minimize any prejudice to Enterprise; further, in light of the Court's finding that J-Hanna has stated fraud claims against Enterprise, the Court finds the filing of an Amended Complaint is not futile.

III. *Motion to Dismiss Case (Doc. 33) and Motion to Strike (Doc. 49)*

Tucson Chrysler has requested this Court strike J-Hanna's Second Response to Jeep's Motion to Dismiss. J-Hanna has not filed a response. The applicable local rule only provides for a motion, response, and a reply. Pursuant to LRCiv 7.2, the Court will grant the motion to strike.

Initially, the Court recognizes that J-Hanna asserts in her response that she did not allege a common law fraud claim against Tucson Chrysler in her original Complaint. Similarly, the proposed Amended Complaint does not include the phrase "common law fraud." To any extent a common law fraud claim is alleged against Tucson Chrysler, the Court will dismiss it.

The United States Supreme Court has found that, in order to survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its facts." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct.

1955, 1974, 167 L.Ed.2d 929 (2007);[3] *see also Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009*).* While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. Indeed, Fed.R.Civ.P. 8(a)(2) requires a showing that a plaintiff is entitled to relief "rather than a blanket assertion" of entitlement to relief. *Id.* at 1965 n. 3. The complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right to action." *Id.* at 1965. The Court also considers that the Supreme Court has cited *Twombly* for the traditional proposition that "[s]pecific facts are not necessary [for a pleading that satisfies Rule 8(a)(2)]; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardue*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 929 (2007).

This Court must take as true all allegations of material fact and construe them in the light most favorable to J-Hanna. *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). Nonetheless, the Court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

A. *A.R.S. § 44-1212*

The Court finds J-Hanna's failure to include this claim in her proposed Amended Complaint is an acknowledgment that judgment on the pleadings is appropriate as to this claim. Indeed, J-Hanna agrees in her response that such a claim is not viable. The Court finds dismissal for failure to state a claim is appropriate as to the claim of a violation of A.R.S. § 44-1212.

---

[3]The holding in *Twombly* explicitly abrogates the well established holding in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

- 7 -

B. *Arizona Consumer Fraud Act, A.R.S. §§ 44-1521– 44-1534*

In requesting dismissal of the Consumer Fraud Act claim, Tucson Chrysler asserts that J-Hanna has failed to plead this claim with particularity. *See e.g. Cafasso ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (explicitly recognizing that *Iqbal* 's plausibility requirement applies to fraud claims made under False Claims Act). Indeed, J-Hanna has not alleged that Tucson Chrysler misrepresented any facts to her prior to her purchasing the vehicle. Rather, J-Hanna's allegations make clear that her contact with Tucson Chrysler did not occur until after the purchase of the vehicle. Moreover, although J-Hanna asserts that the repairs completed by Tucson Chrysler were inadequate, J-Hanna has not alleged any fraud claim in the repair of the vehicle.

Additionally, J-Hanna has not alleged with sufficient particularity that Tucson Chrysler and Tucson Dodge "reached some explicit or tacit understanding[,]" *Ares Funding, L.L.C. v. MA Maricopa, L.L.C.*, 602 F.Supp.2d 1144, 1150 (D.Ariz. 2009), *quoting Alfus v. Pyramid Technology Corp.*, 745 F.Supp. 1511, 1521 (N.D.Cal. 1990), or alleged a relationship that states a claim for fraud against Tucson Chrysler. Dismissal for failure to state a claim is appropriate.

Additionally, the Court agrees with Tucson Chrysler that a claim pursuant to the Consumer Fraud Act, A.R.S. § 44-1522, has a one year statute of limitations. *Alaface v. National Inv. Co.*, 181 Ariz. 586, 892 P.2d 1375 (App. 1994). However, because the proposed Amended Complaint alleges J-Hanna learned of the theft in either July 2008 or 2009, the Court declines to dismiss this claim on this ground at this stage of the litigation. Nonetheless, because of the requirements of pleading fraud with particularity, the Court finds the filing of the proposed Amended Complaint would be futile as to this claim against Tucson Chrysler.

C. *Breach of Warranty*

J-Hanna does not allege a separate warranty was provided to her by Tucson Chrysler. As previously stated, the lack of privity prevents a valid breach of warranty claim against

Tucson Chrysler. The Court finds dismissal for failure to state a claim is appropriate as to the breach of warranty claim. Further, the proposed Amended Complaint does not cure this deficiency.

D. *Punitive Damages*

Because the Court has determined that J-Hanna has not stated a claim upon which relief can be granted, a claim for punitive damages cannot proceed against Tucson Chrysler. *See e.g. Saucedo ex rel. Sinaloa v. Salvation Army*, 290 Ariz. 179, 185-86, 24 P.3d 1274, 1280-81 (App. 2001) (vacating a new trial order on punitive damages in light of the defendant's entitlement to a directed verdict on compensatory damages).

The Court will grant Tucson Chrysler's Motion to Dismiss.

IV. *Motion to Stay Case and Compel Arbitration (Doc. 32) and Motion to Strike (Doc. 47)*

Tucson Dodge has requested this Court strike the second response to the Motion to Stay Case and Compel Arbitration filed by Plaintiff Ariann J-Hanna ("J-Hanna"). J-Hanna has not filed a response. The applicable local rule only provides for a motion, response, and a reply. LRCiv 7.2. The Court will grant the motion to strike.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 was enacted to "overcome courts' reluctance to enforce arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The FAA reverses "the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991). Pursuant to the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, "general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Adams*, 279 F.3d at 892, *citing Doctor's Assocs., Inc. v. Casarotto*,

517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (the FAA mandates district courts to direct parties to arbitration on issues as to which arbitration has been agreed upon). When evaluating the validity of an arbitration agreement, federal courts are to "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Furthermore, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), *quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Tucson Dodge requests this matter be stayed and that arbitration be compelled. J-Hanna asserts the arbitration clause in the agreement (the "Agreement") is not valid and is, therefore, not enforceable. Specifically, J-Hanna asserts that the Agreement arose out of fraud, that she was not provided notice of the Agreement, and that the Agreement does not apply to her. The Court accepts J-Hanna's argument as attacking the Agreement as unconscionable.

A. *Unconscionability*

Arizona's statutory provision on unconscionability, A.R.S. § 47-2302, provides:

A. If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

B. When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

As previously stated, the general contract defense of unconscionability may operate to invalidate arbitration agreements. *Adams*, 279 F.3d at 892. However, "[c]ourts should not assume an overly paternalistic attitude toward the parties to a contract by relieving one or another of them of the consequences of what is at worst a bad bargain[.]" *Nelson v. Rice*, 198

Ariz. 563, 568, 12 P.3d 238, 243 (App. 2000), *quoting Pacific Am. Leasing*, 152 Ariz. 96, 103, 730 P.2d 273, 280 (App. 1986).

"Unconscionability includes both procedural unconscionability, i.e., something wrong in the bargaining process, and substantive unconscionability, i.e., the contract terms per se." *Nelson*, 198 Ariz. at 567, 12 P.3d at 242, *quoting Phoenix Baptist Hosp. & Medical Ctr., Inc. v. Aiken*, 179 Ariz. 289, 283, 877 P.2d 1345, 1349 (App. 1994). The Supreme Court of Arizona has recognized that, while contracts may have elements of both procedural and substantive unconscionability, "a claim of unconsionability can be established with a showing of substantive unconscionability alone[.]" *Maxwell*, 184 Ariz. at 90, 907 P..2d at 59.

1. *Procedural Unconscionability*

Procedural unconscionability is concerned with unfair surprise; courts examine factors influencing the "the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible [and] whether there were alternative sources of supply of the goods in question." *Maxwell v. Fidelity Fin. Servs.*, 184 Ariz. 82, 89, 907 P.2d 51, 58 (1995), *quoting Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 268 (E.D.Mich. 1976).

J-Hanna asserts that she was not provided notice as to the Agreement or its scope. However, the Agreement clearly states that the "PURCHASER ACKNOWLEDGES THAT THIS ORDER INCLUDES ALL OF TERMS AND CONDITIONS ON BOTH THE FACE AND REVERSE SIDE HEREOF" immediately preceding J-Hanna's signature. Doc. 32, Ex. A. The reverse side clearly sets forth the terms and scope of the arbitration.

Moreover, J-Hanna has not asserted that she had any basis to conclude that, if she failed to accept the terms and conditions on the reverse side of the document, the sale would not have proceeded, i.e., that she did not have a meaningful opportunity to negotiate the

- 11 -

terms of the Agreement and that it was offered to her in a "take it or leave it" basis. Indeed, J-Hanna does not assert that she did not have a chance to read the Agreement, Tucson Dodge buried the Agreement, the Agreement was illegible, the Agreement was bizarre or oppressive, the Agreement was contrary to prior negotiations, or that Tucson Dodge had any reason to believe that J-Hanna would not have accepted the Agreement if J-Hanna had known the Agreement contained any particular provision. *See Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 391-92, 682 P.2d 388, 396-97 (1984); *see also Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 247, 119 P.3d 1044, 1050 (App. 2005) (contractual terms are beyond the range of reasonable expectations only if one party "has reason to believe that the other party would not have accepted the agreement if he had known the agreement contained the particular term").

Additionally, the Court notes that J-Hanna has alleged claims of fraud. However, there is no basis to conclude there was any fraud in the Agreement to arbitrate. Any claims by J-Hanna relating to fraud in the inducement of the contract for sale are precisely the type of claim the Supreme Court has declared should go to arbitration. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398, 406-07, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the parties agreed to a contract with an arbitration clause which read that "[a]ny controversy or claim arising out of or relating to this Agreement ... shall be settled by arbitration ... in accordance with the rules ... of the American Arbitration Association." Prima Paint sought rescission of the contract on the basis of fraudulent inducement, alleging that the defendant had not revealed during contract negotiations its plans to file bankruptcy. The Court concluded that the language of the arbitration clause was "easily broad enough to encompass Prima Paint's claim that both execution and acceleration [of the whole contract] were procured by fraud," *id*. at 406, and held that consideration of a claim of fraud in the inducement of a contract "is for the arbitrators and not for the courts[.]" *Id*. at 400.

The Court finds the Agreement is not procedurally unconscionable.

2. *Substantive Unconscionability*

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell*,184 Ariz. at 88, 907 P.2d at 57, *citing Resource Management Co. v. Weston Ranch and Livestock Co.*, 706 P.2d 1025, 1041 (Utah 1985); *see also Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 252, 119 P.3d 1044, 1055 (App. 2005) (factors showing substantive unconscionability include "contractual terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity"). In Arizona, a case-by-case approach is used in determining whether the terms imposed under an arbitration agreement deny a potential litigant the opportunity to vindicate her rights. *Batory v. Sears, Roebuck & Co.*, 456 F.Supp.2d 1137, 1141 (D.Ariz. 2006).

J-Hanna asserts that the Agreement does not offer the same remedies and relief available to her in a court action. J-Hanna asserts that she will not be able to appeal an arbitration award. However, the FAA provides for application to a court for confirmation vacation, or modification of an arbitration award if appropriate. *See* 9 U.S.C. §§ 10-11. Moreover, contrary to J-Hanna's assertion, the Agreement specifically provides that the parties are to choose a mediator – rather than Tucson Dodge having the exclusive right to select an arbitrator.

As to J-Hanna's claim that she cannot pay the arbitration fees, where "a party seeks to invalidate an arbitration agreement on the grounds that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000); *see also Harrington*, 211 Ariz. at 252-53 ("The affidavits offer no specific facts regarding appellees' financial situations, only conclusory statements. There is no showing of assets or why arbitration costs would be a hardship, let alone a *prohibitive* hardship[.]"). Indeed, Arizona courts place the burden of proving that a term is unduly expensive on the party seeking to invalidate the agreement. *See Batory*, 456 F.Supp.2d at 1141. J-Hanna has not made a showing that arbitration would be prohibitively expensive. Moreover, the

Agreement provides that the arbitration will be conducted in accordance with the American Arbitration Association (AAA") Commercial Arbitration Rules. Those rules provide that, "[u]nless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award." Commercial Arbitration Rule O-8, http://www.adr.org/sp.asp?id=22440#flex. The Rules also state:

> In an effort to make arbitration costs reasonable for consumers, the AAA has a separate fee schedule for consumer-related disputes. Please refer to Section C-8 of the Supplementary Procedures for Consumer-Related Disputes when filing a consumer-related claim. Note that the Flexible Fee Schedule is not available on cases administered under these supplementary procedures.
>
> The AAA applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

*Id.* In other words, the AAA Rules provide for procedures to accommodate the potential financial hardship of a participant. The Court finds this claim by J-Hanna does not warrant a finding that the Agreement is unconscionable.

B. *Arising Out of or Directly Relating to the Agreement*

The Court notes that J-Hanna discusses various terms of the Agreement in support of her assertion that she is not bound by the Agreement. However, the individual terms of the contract for the purchase of the vehicle do not address whether the agreement to arbitrate is valid. For example, whether Tucson Dodge advised J-Hanna of specific problems of the vehicle goes to whether J-Hanna has a claim against Tucson Dodge, not whether the Agreement to arbitrate is binding.

J-Hanna asserts that the dispute raised in this case does not arise out of and is not directly related to the contract for sale. The scope of arbitration proceedings is "determined

by the contract requiring arbitration as well as by the parties' definition of the issues to be submitted in the submission agreement." *Schoenduve Corp. v. Lucent Techs. Inc.*, 442 F.3d 727, 732 (9th Cir.2006), *citation omitted*.

An arbitration clause using only "arising out of" language without additional "or relating to" language is typically interpreted narrowly. *See e. g., Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294-95 (9th Cir.1994) (applying federal law to determine the scope of the arbitration); *Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 807 (N.D.Cal.2004). However, a clause that required arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement" is considered a broad clause. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Indeed, the Ninth Circuit has observed that the phrase "arising out of or relating to" creates an arbitration clause that is "broad and far reaching" in scope. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir.2000); *see also Britton v. Co-op Banking Group*, 4 F.3d 742, 745 (9th Cir.1993) (holding that such language is "routinely used in many securities and labor agreements to secure the broadest possible arbitration coverage"). An arbitration clause with a broad and far reaching scope "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir.1999) (interpreting an arbitration clause that applied to all disputes "arising in connection with" the agreement). To require arbitration, the factual allegations of the complaint "need only 'touch matters' covered by the contract containing the arbitration clause." *Id.*, *quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n. 13, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

In essence, J-Hanna's claims arise out of the purchase of the vehicle, including whether adequate information was provided to J-Hanna before the purchase and actions taken regarding the vehicle after the purchase. These claims not only "touch" matters covered by the contract, but directly relate to the purchse contract. The Court finds the claims between J-Hanna and Tucson Dodge are within the scope of the Agreement. The Court will grant the

stay as to the claims between J-Hanna and Tucson Dodge.[4]

V. *Ninth Circuit Mediation*

The Court finds it appropriate to notify J-Hanna, Enterprise, and Tucson Dodge of mediation assistance by the Ninth Circuit Mediator Program.[5]

Presently, two of the five district judge positions in Tucson remain unfilled. Moreover, the criminal workload at this extraordinarily busy court has almost doubled this year. This is putting a strain on the judicial resources of the court. Among other help we are receiving from federal judges throughout the country, the Ninth Circuit Mediator Program has offered to assist us.

Unless this case is one that should go to trial, it is recommended that you discuss the possibility of using the Mediator Program. Mediators from the Ninth Circuit will be here during the weeks of October 17, 2011, and November 14, 2011. The mediators are all licensed attorneys who have an average twenty-five years of combined private-law and mediation practice. The Program itself has an excellent reputation.

The mediators are open to modifying their process to suit the needs of a particular case. Typically, the Mediator Program sets aside an entire day for a mediation. They usually begin the mediation with a joint opening session and then break into caucuses. They do intend to have the presence and participation of all the parties. The mediation will take place

---

[4]The issue of whether the entire proceeding should be stayed pending resolution between J-Hanna and Tucson Dodge is not before this Court. If a party believes such an encompassing stay is appropriate, that party may request the Court to consider that issue.

[5]Additionally, the Court advises J-Hanna and Tucson Dodge that it will defer ruling on the Motion to Stay Case and Compel Arbitration for approximately two weeks. In the event J-Hanna and Tucson Dodge seek to participate in the mediator program before proceeding to arbitration, the parties shall notify the Court on or before October 18, 2011, and the Court will continue to defer ruling on the pending motion. The Court further advises J-Hanna and Tucson Dodge that it anticipates that agreement to participate in the mediator program would not prejudice Tucson Dodge's right to enforce the arbitration agreement and the Court would expect a stipulation to that effect.

- 16 -

here at the courthouse.

The mediation will be initiated through court order, after which someone from the Mediator Program will contact counsel to set up a telephonic conference. The telephonic conference will occur approximately two weeks after the order setting the mediation issues. During the telephonic conference, the attorneys will schedule the date for the mediation and plan all the details related to it. After the telephonic conference, the mediator will issue a notice which sets out the details of the mediation, including requirements for the mediation statements, attendance, and confidentiality.

If you are interested in scheduling one of the available times during those two weeks, please contact my law clerk, Elizabeth J. Jarecki, at 520-205-4552. You may find out more about the mediation program at http://www.ca9.uscourts.gov/mediation/.

Accordingly, IT IS ORDERED:

1. The Motion for Judgment on the Pleadings filed by Enterprise (Doc. 30) is GRANTED IN PART AND DENIED IN PART.

2. J-Hanna's A.R.S. § 44-1212 and breach of warranty claims against Enterprise are DISMISSED.

3. The Court declines to rule, at this time, on the Motion to Stay Case and Compel Arbitration filed by Tucson Dodge.(Doc. 32).

4. The Motion to Dismiss Case filed by Tucson Chrysler (Doc. 33) is GRANTED.

5. The Motion for Extension of Time to File Response (Doc. 36) is GRANTED.

6. The Motions to Strike (Docs. 39, 47, and 49) are GRANTED.

7. J-Hanna's supplemental responses and addendums (Docs 37, 38, 46, 48) are STRICKEN.

8. The Motion for Leave to File Amended Complaint (Doc. 50) is GRANTED.

9. The Clerk of the Court shall docket the Amended Complaint (Doc. 51).

10. Enterprise shall file its Answer or other respond to the Amended Complaint

within 20 days of this Order.[6]

DATED this 4th day of October, 2011.

_____
Cindy K. Jorgenson
United States District Judge

---

[6]In the event the parties seek to participate in the mediator program, Enterprise may seek an extension of this deadline.

- 18 -